## ELSEY v. STAMPS.

1. BILLS AND NOTES. *Payable in merchandise. How value to be determined.*
E and S exchanged tracts of land. S to pay $1,000 which might be
or was to be discharged in whiskey. This contract being mislaid
and the parties differing as to its terms, agreed that two notes should
be given and received, each for twelve hundred and fifty gallons of
whiskey, to be delivered March 1, 1862, at Estell's Springs or at Shel-
byville. The whiskey was demanded but not delivered, as S claimed
he was prevented by the war, and that it was dangerous to deliver the
whiskey. *Held,* that S was liable for the value of the whiskey at the
time it should have been delivered. That it was dangerous to deliver
it, was no excuse for not performing the contract; having been
notified to deliver, it would have been at the risk of E.

2. CHANCERY PLEADINGS AND PRACTICE. *Set-off.* If the defendant relies
on set-off, he must in his answer specify what his claims of set-off are.
He will be allowed no other claims than those specified, unless com-
plainant waives such strictness and agrees that all claims shall be
allowed.

---

### FROM MARSHALL.

---

Appeal from the Chancery Court of Marshall county.
W. S. FLEMING, Ch.

LEWIS BRO., A. S. COLYAR and A. S. MARKS for
complainant.

R. WARNER and COOPER & FRIERSON for defendants.

FREEMAN, J., delivered the opinion of the court.

The bill in this case charges that complainant sold
a tract of land to respondent, which he afterwards

conveyed to him. That in consideration of this land, respondent executed two notes to complainant, said notes being for twelve hundred and fifty gallons of whiskey each, to be paid on the 1st day of March, 1862, to be delivered at Estell's Springs, in Franklin county, or at Shelbyville, Bedford county, on that day. The other note was for like amount, to be paid in the same way at either of said places, in March, 1863.

The prayer of this bill is an enforcement of complainant's lien on the land, after a judgment at law had ascertained the amount due—a suit at law having before that been instituted on the notes.

An amended bill was afterwards filed, charging that defendant, about the time of filing the original bill, had sold the land for $6,000 to one Daniel, who had executed his notes for the same, and had notice the purchase money was unpaid. The prayer of this bill was for the attachment of the notes, and appropriation of the amount to payment of complainant's debt—and if Stamps had disposed of the notes, a lien then be enforced against the land.

Respondent answered, making his answer a cross-bill, in which he insisted on about the following, as defense to the claim of complainant.

The notes, we omitted to state, bear date July 24, 1861. Respondent says, that the land transaction was an exchange made the 11th of December, 1860, in which the contract was, he was to pay one thousand dollars, as the difference between tracts, in two annual instalments, "to be discharged in whiskey, at forty cents per gallon, to be delivered at the place of execution

of the contract, or at Shelbyville, as said Elsey might
prefer." He tenders the original contract, with the
above terms, with his answer, by which it appears,
he was to deliver good, merchantable whiskey at the
places aforesaid by the first of December, or between
that time and the first of March following—dated, as
stated, 11th of December, 1860.

He says this contract was left in the hands of
complainant Elsey, and was supposed to be lost for a
time or mislaid. That being desirous of making and
receiving titles to the two tracts of land, respondent
being in possession, on the 24th of July, 1861, after
a long dispute between them as to the terms of the
contract, complainant claiming it was for 2,500 gallons
of whiskey, and respondent doubting and denying it,
he refused to give the notes for the 2,500 gallons of
whiskey, unless Elsey would agree before witnesses
that if anything happened to prevent his making it,
Elsey would not demand more than the one thousand
dollars.

He then claims to have been prevented from mak-
ing it by the progress of the war, and from deliver-
ing it on account of railroads being occupied by the
armies, until the close of the war. That whiskey was
only worth 40 cents a gallon at this time, and he
was willing to furnish it at this price—but if he had
done so, it would have been seized by the military
authorities. After the war, a tax of $2 per gallon
was laid on whiskey, and so he says he ought not to
be now compelled to pay according to the terms of the
notes.

He then pleads certain set-offs owned by him, and asks that they be allowed him.

A notice to deliver the whiskey seems to have been regularly served on respondent, but no delivery was made.

We have carefully examined the proof in this case, and find the result to be about as follows:

The original agreement or contract of sale, was given for one thousand dollars, which might be, or was to be discharged in whiskey. This agreement was lost or mislaid, or probably in the hands of defendant. The parties, when they come to make conveyance of the land, differ as to its terms—but at last it was agreed that the present notes sued on should be given, which was done. We think this was in accord with the wish of defendant. We see no evidence that any advantage was taken of him. He is unquestionably bound by the terms of his contract to pay the market value of the whiskey at the date of the notes, after being notified to deliver at one of the points required by the contract. What that value is, we will not attempt to settle. It is a matter for reference to the clerk. That reference, however, seems to have been made, but the chancellor disregarded the report entirely, and held the complainant only entitled to recover one thousand dollars, instead of the value of the whiskey. In this he erred, and the decree must be reversed.

As to the defense urged, that it was dangerous to deliver the whiskey at Estell's Springs, we think there is nothing in this, as we find no evidence of any

contract that this was to excuse performance. This being so, defendant having been notified by the holder of the paper to deliver the whiskey, a delivery would have been at his risk, and if lost it would have been his loss and not the payor's.

The clerk seems to have allowed several set-offs, not set out in the answer, which was excepted to—but the chancellor seems to have held them good. We need but state the rule, and leave the matter for future reference. The party by his pleading has specified what his claims of set-off are. He can be allowed no other claims than those specified in the answer.

The decree will be reversed, a decree entered here in accordance with this opinion, and the case remanded for the execution of the matters of reference, and a decree on same. Costs of this and the court below will be paid by the defendant.

Upon a petition to rehear, FREEMAN, J., said:

A petition for rehearing of this case was filed some weeks since. We proceed to dispose of the questions presented.

First, it is said the decree is wrong in disallowing only the set-off of $444.56, specially set up in the cross-bill in which this claim is made.

The allegation is, that respondent holds claims against complainant which he is advised he will be allowed to set off against any recovery by complain-

ant. One of said claims is a note on said Elsey, due February 26th, 1861, for $444.56, and he prays to be permitted to file and specify the others when he shall be able to get them from Franklin county.

The response to this by complainant is, he has no knowledge of any indebtedness to complainant; but if complainant has any *bona fide* demands against respondent, he is willing to allow a credit for them.

While in strictness, the complainant in his cross-bill could only have the benefit of such set-offs as he specified, yet, on reflection, we think complainant has waived this strictness on this subject, and agrees that all demands *then* held by the party should be credited on his claim or against his recovery. In view of this, the decree will be modified so as to allow all legal and existing claims *owned* by complainant in the cross-bill (the defendant in the original bill) at the time of filing said cross-bill.

As to the other matters, they are the same as presented in former arguments—and go to the question as to whether the notes are to be enforced by their plain terms, or whether the original agreement shall be looked to. There can be no question that the notes create the obligation of defendant—were given by him, as the amount due, and even in terms as he then wished and approved.

With the above modification of the decree, the petition will be dismissed.